**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MD Helicopters Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>The Boeing Company,<br><br>Defendant. | No. CV-17-02598-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff MD Helicopters Inc.'s ("MDHI") Motion to Dismiss Defendant The Boeing Company's ("Boeing") Counterclaims 1–4 and 6–9, (Doc. 21). Boeing filed a Response in Opposition to the Motion to Dismiss, (Doc. 25), and MDHI filed a Reply in Support of Plaintiff's Motion to Dismiss, (Doc. 26).

**I.  Background**

MDHI manufactures helicopters for commercial, military, and law enforcement markets. (Doc. 9 at 2). Boeing is an aerospace business that, among other product offerings, designs, develops, produces, sells, and offers support for military helicopters. (Doc. 9 at 3); (Doc. 16 at 2). In February of 2005, MDHI and Boeing entered into an Asset Acquisition Agreement ("AAA"), (Doc. 16-1 at 2–39), and a Cross License, (Doc. 16-2 at 1–21), so that Boeing could purchase some of MDHI's intellectual property and, in turn, license the purchased assets back to MDHI on a non-exclusive basis, (Doc. 16 at 8); (Doc. 29 at 1–2).  In July of 2010, Boeing and MDHI entered into a Memorandum of Agreement ("2010 MOA"), (Doc. 16-2 at 22–46), providing that "MDHI and Boeing will

cooperatively produce and support the AH-6i Aircraft in the worldwide market," (Doc. 16 at 12); (Doc. 9 at 3). On October 6, 2011, MDHI and Boeing signed a Long Term Requirements Contract ("LTRC") whereby MDHI agreed to sell and Boeing agreed to buy airframes and related components for the AH-6i helicopter. (Doc. 9 at 3); (Doc. 16 at 12). The LTRC incorporated the Boeing Company General Provisions 1, (Doc. 16-3 at 36–45), dated April 1, 2009 ("GP1"), (Doc. 9 at 4); (Doc 16 at 13). In November 2011, the parties agreed to the Master Purchase Contract No. 524842 ("Master PC"), which incorporates the terms of the LTRC. (Doc. 16 at 14); (Doc. 9 at 4).

Boeing claims, and MDHI denies, that, from late 2011 to the middle of 2012, MDHI complained to Boeing that there had not been any orders for parts under the LTRC. (Doc. 16 at 15); (Doc. 29 at 4). Boeing likewise claims, and MDHI denies, that in April of 2012, MDHI announced that it would compete against Boeing for an Army contract by bidding its own helicopter, the MD 540F, against Boeing's AH-6i. *Id.*

On July 26, 2012, Boeing issued Purchase Contract No. 648538 to MDHI for the purchase of airframes and related components for the AH-6i. *Id.* Boeing claims, and MDHI denies, that MDHI initially refused to sign this Purchase Contract in an alleged violation of the LTRC. *Id.* Eventually, in September of 2012, MDHI signed Purchase Contract No. 648538. *Id.*

Following these events, Boeing claims, and MDHI denies, that MDHI attempted to frustrate Boeing's AH-6i program, by engaging in delivery delays and poor production. *Id.* MDHI claims, and Boeing denies, that during the course of performance under the purchase contract for airframes for the AH-6i, MDHI raised various issues regarding the pricing, delivery schedule, and additional work required. (Doc. 9 at 4); (Doc. 16 at 3). In May of 2015, MDHI prepared and submitted to Boeing a formal Request for Equitable Adjustment ("REA"). *Id.* Additionally, in response to the various issues surrounding the production and delivery of the AH-6i parts, in August of 2015, the parties entered into a Memorandum of Agreement ("2015 MOA"). (Doc. 9 at 5); (Doc. 16 at 3). Boeing claims that after the parties entered into the 2015 MOA, MDHI timely

delivered five AH-6i airframes. (Doc. 16 at 16). However, after that, on March 7, 2016, Boeing and MDHI entered into the Purchase Contract Change No. 32 ("PCC-32"), which Boeing alleges established a new schedule setting deadlines for delivery of the remaining airframes. (Doc. 16 at 16); (Doc. 29 at 5). Boeing further alleges that, despite that agreed-upon schedule under the PCC-32, MDHI failed to timely deliver the remaining seventeen airframes as required. (Doc. 16 at 16). MDHI claims that AH-6i production delays were caused, in part, by labor unrest issues in Monterrey, Mexico. (Doc. 29 at 5). Boeing conducted an investigation into the delays and does not accept MDHI's explanation, but rather believes that MDHI's reasons for the post-2015 MOA delays were pretextual and that MDHI's true objective was to undermine Boeing's efforts so MDHI could promote its own MD 540F helicopter. (Doc. 16 at 16–18).

After the performance period of the LTRC, Boeing sought out other suppliers to supply parts for the AH-6i. Boeing claims, and MDHI denies, that MDHI instructed other suppliers not to work with Boeing. (Doc. 16 at 20–21); (Doc. 29 at 6). Boeing likewise claims, and MDHI denies, that MDHI did not provide written notice to MDHI's suppliers that they could work with Boeing as allegedly required by the AAA and the Cross License. (Doc. 16 at 20); (Doc. 29 at 6).

MDHI claims Boeing has failed to pay MDHI for the AH-6i airframes delivered to Boeing. (Doc. 9 at 6). Boeing admits that it is in possession of the AH-6i airframes MDHI delivered, but states that MDHI's delivery of the final airframe was incomplete and nonconforming, thus MDHI was not entitled to payment. (Doc. 16 at 4).

Boeing also claims that MDHI is in possession of parts that rightfully belong to Boeing and its customers. (Doc. 16 at 22–23). Boeing believes that MDHI is holding these parts as a method to extract payment on MDHI's contract claims. (Doc. 16 at 24).

MDHI has presented two claims: 1) Breach of the 2015 MOA and 2) Breach of Implied Covenant of Good Faith and Fair Dealing. Boeing has presented nine counterclaims: 1) Breach of the AAA; 2) Breach of the Cross License; 3) Breach of LTRC; 4) Breach of the GP1; 5) Breach of the 2015 MOA and PCC-32; 6) Breach of the

Implied Covenant of Good Faith and Fair Dealing; 7) Conversion; 8) Tortious Interference with Contract and Business Expectancy; and 9) Declaratory Judgment. MDHI has moved to dismiss all of Boeing's counterclaims except its fifth counterclaim.

## II. Legal Standard

MDHI has moved to dismiss the Boeing's Counterclaims 1–4 and 6–9 for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citations and internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet the requirements of Rule 8. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. A complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but it requires more than a sheer possibility that

- 4 -

a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When analyzing a complaint for failure to state a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the nonmoving party. *Jacobsen v. Hughes Aircraft Co.*, 105 F.3d 1288, 1296 (9th Cir. 1997), *rev'd on other grounds*, 525 U.S. 432 (1999). Moreover, "[i]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Furthermore, absent specific exceptions, the Court will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision). There are two exceptions to the general rule. First, "[i]f the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citations omitted). "Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 688–89 (internal quotations and citations omitted).

Finally, this Court has diversity jurisdiction under Section 1332. *See* 28 U.S.C. § 1332. A court sitting in diversity applies federal procedural law and state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, this Court will apply the substantive law of Arizona. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

### III. Analysis

#### A. First Counterclaim: Breach of Contract—AAA

In order to state a claim for breach of contract, the counterclaimant must allege the existence of a contract between the parties, a breach of the contract, and damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).

##### a. Failure to Allege Damages

Boeing alleges that it was damaged as a result of MDHI's alleged breach of the AAA contract. MDHI argues that the alleged damages are "claims for impermissible future and speculative damages," (Doc. 26 at 6); however, based on Boeing's counterclaim, it is plausible that Boeing has suffered and will suffer economic damages from MDHI's alleged conduct. Thus, construing the facts alleged in the light most favorable to the nonmoving party, this Court holds that Boeing sufficiently alleged damages.

##### b. Failure to Allege Sufficient Detail

MDHI contends that Boeing failed to allege sufficient detail in its first counterclaim because Boeing did not explicitly list within the counterclaim the provisions of the AAA that were breached.[1] However, although Boeing did not reference the exact numerical section of the contract within the counterclaim, the allegations are clearly related to particular clauses within the contract, specifically, the Field of Use and Notice provisions in sections 2.1.1(a) and 8.1(a), respectively. Accordingly, while references within the counterclaim to those specific provisions may have assisted in the Court's review, the general factual allegations were sufficient to support the breach of contract

---

[1] MDHI cites several cases arguing that failure to reference the exact provision in a contract amounts to failure to allege sufficient facts, however, the cases cited do not go that far, they only require that the allegations relate to specific provisions, not that the specific provisions be referenced in the counterclaim itself. *See Warring v. Green Tree Servicing LLC*, No. CV-14-0098-PHX-DGC, 2014 WL 2605425, at *3 (D. Ariz. June 11, 2014); *Howard v. JPMorgan Chase Bank, N.A.*, No. CV12-0952-PHX-DGC, 2012 WL 6589330, at *2 (D. Ariz. Dec. 17, 2012); *Thompson v. SunTrust Mortg., Inc.*, No. CV11-0284-PHX-DGC, 2011 WL 3320774, at *4 (D. Ariz. Aug. 2, 2011); *Wright v. Chase Home Fin. LLC*, No. CV-11-0095-PHX-FJM, 2011 WL 2173906, at *2 (D. Ariz. June 2, 2011).

counterclaim. Thus, construing the facts alleged in the light most favorable to the nonmoving party, this Court finds that Boeing pleaded sufficient facts to establish a breach of contract claim.

### c. Failure to Comply with Alternative Dispute Resolution Procedures

A strong federal policy favoring arbitration exists, and courts must rigorously enforce agreements to arbitrate. *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4) (other citations omitted). If a district court decides that an arbitration agreement is valid and enforceable, "then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

Courts interpret agreements to arbitrate "by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Courts

"ordinarily will not except a controversy from coverage of a valid arbitration clause unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984) (internal quotation and citation omitted). However, the federal policy favoring arbitration cannot "override[ ] the principle that a court may submit to arbitration only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (internal quotation and citation omitted).

Here, there is no dispute between the parties that the AAA contains a mandatory dispute resolution clause, requiring that "the procedures specified in this Section 8.19 shall be the sole and exclusive procedures for the resolution of disputes between the Parties arising out of or relating to this Agreement and any of the Related Agreements." (Doc. 16-1 at 69). What is disputed is whether subsequent agreements, the 2010 MOA and the GP1, supersede or conflict with the mandatory arbitration provisions of the AAA. Section 8.3 of the 2010 MOA incorporates by reference the provisions of GP1. (Doc. 16-3 at 33). Furthermore, the GP1 provides:

> Any dispute that arises under or is related to this contract that cannot be settled by mutual agreement of the parties may be decided by a court of competent jurisdiction. Pending final resolution of any dispute, Seller shall proceed with performance of this contract according to Buyer's instructions so long as Buyer continues to pay amounts not in dispute.

(Doc 16-3 at 39). Ultimately, whether the 2010 MOA provision supersedes or conflicts with the AAA depends on whether the agreements cover the same subject matter. This Court finds, based on review of the relevant agreements, that although the AAA and 2010 MOA are related, the two agreements cover different subjects and serve different purposes. The AAA concerns the purchase of intellectual property, (*see generally* Doc. 16-1 at 40–72), while the 2010 MOA concerns how the parties will work together to manufacture and produce the AH-6i aircraft, specifically, what Boeing would purchase and what MDHI would sell to Boeing through the Purchase Contracts, (*see* Doc. 16-2 at

24).

Under its first counterclaim, Boeing alleges that MDHI breached the AAA for failing to issue written notices to third-parties, taking a contrary position with the government that the AH-6i was in Boeing's Field of Use, and soliciting opportunities to support the AH-6i without Boeing's permission in contravention of the AAA's Field of Use. (Doc. 16 at 29). These allegations fall within the subject matter of the AAA, specifically, the Field of Use and Notice provisions in sections 2.1.1(a) and 8.1(a), and do not relate to the work agreement within the MOA. Accordingly, the dispute resolution provisions of the AAA apply to the allegations within Boeing's first counterclaim and Boeing's first counterclaim is dismissed without prejudice.

### B. Second Counterclaim: Breach of Contract—Cross License

#### a. Failure to Allege Damages

Boeing alleges that it was damaged as a result of MDHI's alleged breach of the Cross License contract. MDHI argues that the alleged damages are "claims for impermissible future and speculative damages," (Doc. 26 at 6); however, based on Boeing's counterclaim it is plausible that Boeing has suffered and will suffer economic damages from MDHI's alleged conduct. Thus, construing the facts alleged in the light most favorable to the nonmoving party, this Court holds that Boeing sufficiently alleged damages.

#### b. Failure to Allege Sufficient Detail

MDHI contends that Boeing failed to allege sufficient detail in its second counterclaim because Boeing did not explicitly list within the counterclaim the provisions of the Cross License that were breached. However, although Boeing did not reference the exact numerical section of the contract within the counterclaim, the allegations are clearly related to particular clauses within the contract, specifically, the Field of Use in sections 2 and 3 and the Notice provision in section 3.5. Accordingly, while references within the counterclaim to those specific provisions may have assisted in the Court's review, the general factual allegations were sufficient to support the breach of contract counterclaim.

Thus, construing the facts alleged in the light most favorable to the nonmoving party, this Court finds that Boeing pleaded sufficient facts to establish a breach of contract claim.

### c. Failure to Comply with Alternative Dispute Resolution Procedures

The parties do not dispute that section 6.10 of the Cross License requires dispute resolution. (Doc. 16-2 at 20). The parties dispute whether subsequent agreements, the 2010 MOA and the GP1, supersede or conflict with the mandatory arbitration provisions of the Cross License. Ultimately, whether the 2010 MOA provisions supersede or conflict with the Cross License depends on whether the agreements cover the same subject matter. After reviewing the relevant agreements, this Court finds that, although the 2010 MOA and the Cross License are related, the two agreements cover different subjects and serve different purposes. The Cross License concerns a licensing agreement, (*see generally* Doc. 16-2 at 1–21), while the 2010 MOA concerns how the parties will work together to manufacture and produce the AH-6i aircraft, (*see* Doc. 16-2 at 24).

Under its second counterclaim, Boeing alleges that MDHI breached the Cross License for failing to issue written notices to third-parties, taking a contrary position with the government that the AH-61 was in Boeing's Field of Use, and soliciting opportunities to support the AH-6i without Boeing's permission in contravention of the Cross License Field of Use. (Doc. 16 at 30). Boeing's allegations concerning failure to provide notice fall under section 3.5 of the Cross License; likewise, Boeing's allegations concerning the Field of Use fall under sections 2 and 3 of the Cross License. Boeing's claims do not relate to the work agreement within the 2010 MOA. Accordingly, the dispute resolution provisions of the Cross License apply to the allegations within Boeing's second counterclaim and Boeing's second counterclaim is dismissed without prejudice.

### C. Third Counterclaim: Breach of Contract—LTRC
#### a. Failure to Allege Existence of a Valid Contract

Boeing alleges that MDHI breached its obligations under the LTRC. In response, MDHI alleges that the LTRC is no longer valid. First, MDHI claims the agreement is no

longer valid because the performance period for the agreement only extended to August 18, 2014. Section 3.1 of the LTRC provides "[t]his Agreement will be in effect for thirty[-four] (34) months from the date of the execution of this Agreement (such period, hereinafter, the 'Term') by both Parties." (Doc. 16-3 at 7). Section 3.2 also provides "SELLER will accept and process all Orders issued by BUYER that are in accordance with the Matrix during the Term, even if the delivery dates of any Orders placed during the Term extend beyond the end of the Term." *Id.*

Boeing argues that section 3.2 extends the period of the contract until orders are delivered. However, section 3.2 does not apply to the extension of the contract with respect to all obligations under the agreement, but rather just the processing of orders that have already been placed. Accordingly, Boeing's first allegation under counterclaim three, that MDHI breached "its contractual obligation not to undertake any action or communicate any information to maliciously or unfairly influence Boeing's efforts to sell and support its AH-6i" does not fall under the 3.2 extension and any alleged breach after August 18, 2014 would be outside the scope of the agreement. However, Boeing's second and third allegations that MDHI failed "to supply parts that are free from defects in materials and workmanship" and failed "to promptly fix any defects identified by Boeing" may fall within the 3.2 extension. Thus, construing the facts in favor of the nonmoving party, Boeing's second and third allegation under its third counterclaim will not be dismissed for lack of a valid contract.[2]

---

[2] MDHI also argues that Boeing's third counterclaim regarding breach of the LTRC is barred by Delaware's three-year statute of limitation for breach of contract claims. The LTRC has a choice of law provision requiring Delaware law be applied. Under Delaware law, the statute of limitations for a breach of contract claim is three years. Del. Code Ann. tit. 10, § 8106. Furthermore, the cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Accordingly, any breach of the LTRC must have been pursued by Boeing within three years of the breach; however, it is unclear based on the alleged facts when the alleged breaches for failure to supply parts free from defect and failure to promptly fix defects actually occurred. Nevertheless, any alleged breach under Boeing's first allegation would have occurred before August 18, 2014, thus, any action alleging a breach would have needed to be brought by August 18, 2017. Here, Boeing did not file their counterclaims until October 3, 2017; therefore, the first allegation under Boeing's third counterclaim is barred by the

### b. Superseding Agreement—2015 MOA

MDHI argues that the LTRC is superseded by the 2015 MOA. MDHI attached a copy of the 2015 MOA to its Motion to Dismiss (*see* Doc. 21-1); however, the Court cannot consider the content of the 2015 MOA in resolving this motion because the document was not attached to the complaint or counterclaims and no exceptions apply. Consequently, part "a" of Boeing's third counterclaim fails but parts "b" and "c"—"failure to supply parts that are free from defects in materials and workmanship" and "failure to promptly fix any defects identified by Boeing" survive. Accordingly, construing the facts in favor of the nonmoving party, Boeing's third counterclaim is not dismissed because of the plausibility of parts "b" and "c" of the counterclaim.

### D. Fourth Counterclaim: Breach of Contract—GP1

In its fourth counterclaim, Boeing claims that MDHI breached the GP1 contract. However, Boeing acknowledges under its counterclaim that the GP1 is relevant because it was incorporated into the LTRC and the 2015 MOA. (Doc. 16 at 31). The GP1 is not its own contract, but rather only part of other contracts for which Boeing has already alleged breaches. Accordingly, Boeing's fourth counterclaim is dismissed for failure to allege breach of a valid contract. Any alleged breaches of the provisions within the GP1 must be pursued through Boeing's third or fifth counterclaims—counterclaims alleging breaches of the LTRC and the 2015 MOA, respectively. Accordingly, Boeing's fourth counterclaim is dismissed.

### E. Sixth Counterclaim: Breach of the Covenant of Good Faith and Fair Dealing—AAA, Cross License, LTRC, GP1, and the 2015 MOA

Arizona "law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The covenant's purpose is to ensure that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002). A party can breach the covenant "both

---

Delaware statute of limitations.

by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 435.

The AAA and Cross License are subject to alternative dispute resolution requirements as set forth within their contract; thus, claims concerning a breach of the Implied Covenant of Good Faith and Fair Dealing with regard to those contracts must be pursued through the proper alternative dispute resolution channels.

As discussed above, the performance period of the LTRC ended on August 18, 2014, except for the extensions granted to claims regarding MDHI's alleged failure to "supply parts that are free from defects in materials and workmanship" and to "promptly fix any defects identified by Boeing." *See supra* Section III.C.a. Accordingly, the three-year Delaware statute of limitations, which applies to breach of the covenant of good faith and fair dealing claims, *see* Del. Code Ann. tit. 10, § 8106, bars all claims except those relating to the two extended categories.

The GP1 is not a standalone contract, but rather is incorporated through the LTRC and the 2015 MOA. Accordingly, any breach of the provisions of the GP1 must be pursued through the 2015 MOA.

Moreover, MDHI argues that Boeing's sixth counterclaim claim should be dismissed because the implied covenant of good faith and fair dealing does not apply when the contract addresses the conduct at issue. However, although, Boeing did allege breaches that were directly contemplated by the contract, Boeing also addressed the implied covenant of good faith and fair dealing, beyond the explicit provisions of the contract, when it alleged that: MDHI damaged "Boeing's business reputation with its current and potential customers," MDHI "generally act[ed] with an objective to undermine Boeing's efforts so that MDHI could promote its own MD 540F helicopter over the AH-6i," and MDHI "maliciously and unfairly influenc[ed] Boeing's ability to obtain parts from other suppliers or distributors for the [Mission Enhanced Little Bird

("MELB")] and AH-6i helicopter lines." (Doc. 16 at 33). Accordingly, construing the facts in favor of the nonmoving party, Boeing's sixth counterclaim is not dismissed because, although the sixth counterclaim fails with regard to the AAA, Cross License, LTRC, and GP1, Boeing's counterclaim survives with regard to the 2015 MOA.

### F. Seventh Counterclaim: Conversion

Conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U–Haul Co.*, 746 P.2d 488, 489 (Ariz. Ct. App. 1986). Boeing alleges that it has a right to possess or control Boeing-owned parts and customer furnished equipment (the MELB rotor hub assembly owned by the United States Government Special Operations Command). (Doc. 25 at 16). Boeing also alleges that MDHI refuses to give the parts back after repeated requests. *Id.* MDHI argues that Boeing's only rights to the property involved are rights pursuant to contract. (Doc. 21-1 at 22). Conversely, Boeing is not claiming conversion for parts that MDHI never delivered, but rather, conversion for parts actually delivered and other pieces of equipment that were sent to MDHI for repair.[3] Accordingly, Boeing is not merely claiming economic harm for MDHI failing to perform under the contract, but for MDHI failing to return property—whether defective or not—which may rightfully belong to Boeing. Accordingly, construing the facts in favor of the nonmoving party, Boeing's seventh counterclaim is not dismissed.

### G. Eighth Counterclaim: Tortious Interference with Contract and Business Expectancy

Arizona courts will apply the law of the state chosen by the parties to govern their contractual relationship as long as the chosen law has some nexus with the parties or the

---

[3] In its answer, Boeing admits that certain initial deliveries of the AH-6i from MDHI did not constitute final acceptance or "contractual delivery" because the parts were "incomplete and nonconforming." (Doc. 16 at 4). Boeing made this statement to argue that certain payments were not due to MDHI. As such, any AH-6i parts that were never "contractually delivered" as stated by Boeing and sent back to MDHI for repair were never owned by Boeing and thus would not qualify for a claim of conversion.

contract. *Nanini v. Nanini*, 802 P.2d 438, 441 (Ariz. Ct. App. 1990). However, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (internal citation omitted); *see also S. Union Co. v. Sw. Gas Co.*, 165 F. Supp. 2d. 1010, 1028 (D. Ariz. 2001).

MDHI argues that Delaware law should be applied, but the language of the various choice-of-law provisions cited by MDHI do not reference disputes arising out of or relating to the contract but simply the rights and obligations under the contracts. Accordingly, because Boeing's eighth counterclaim arises from tort law and is not an issue concerning the rights and obligations under the contract, Boeing's eighth counterclaim is not controlled by the contractual choice of law provision and Arizona law applies.

Nevertheless, Arizona law and Delaware law concerning Tortious Interference with Contract and Business Expectancy are substantially the same. Arizona requires: (1) "the existence of a valid contractual relationship or business expectancy"; (2) "the interferer's knowledge of the relationship or expectancy"; (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy"; and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 909 P.2d 486, 494 (Ariz. Ct. App. 1995). Meanwhile, Delaware requires: "(1) the existence of either a valid contract or reasonable probability of a business expectancy; (2) the interferer's knowledge of the contract or expectancy; (3) intentional interference that induces or causes a breach or a termination of the business expectancy; and (4) damages." All Pro Maids, Inc. v. Layton, No. CIV.A. 058-N, 2004 WL 1878784, at *6 (Del. Ch. Aug. 9, 2004), aff'd, 880 A.2d 1047 (Del. 2005).

MDHI argues that Boeing's claim for loss of business expectancy fails because

Boeing does not identify the specific suppliers with whom it has a relationship, yet, Boeing clearly referenced its relationship with the U.S Army (Doc. 16 at 25), as well as various distributors, specifically naming "Aviall," (Doc. 16 at 21). Furthermore, MDHI argues that "[j]ust because 'MDHI's interference made it more expensive and burdensome for Boeing to complete the contract' with the Army, does not mean Boeing's contract was breached or terminated." (Doc. 26 at 10). However, the test for tortious interference with contract and business expectancy under both Delaware and Arizona law does not require an actual breach of contract, but rather, requires inducing or causing a breach or termination of the "relationship or expectancy."[4] Thus, construing the facts alleged in the light most favorable to the nonmoving party, this Court finds that Boeing sufficiently pleaded its eighth counterclaim.

### H. Ninth Counterclaim: Declaratory Judgment

The Declaratory Judgment Act provides courts with discretion to either grant or dismiss a counterclaim for declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("The [Declaratory Judgment] Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'") (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

In MDHI's Motion to Dismiss, MDHI offers no arguments or support for dismissing Boeing's ninth counterclaim, accordingly, this court exercises its discretion and chooses not to dismiss Boeing's counterclaim for declaratory judgment.

### IV. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff MD Helicopters Incorporated's Motion to Dismiss, (Doc. 21), is **GRANTED in part and DENIED in part** in accordance with this

---

[4] MDHI cites to the test provided in *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987) to support its proposition that a contract must actually be breached, but that test only relates to the "tortious interference of contractual relations" and does not fully encompass Boeing's claims for "tortious interference with contract and business expectancy."

Order.

**IT IS FURTHER ORDERED** that Defendant's Counterclaims 1 and 2 are dismissed without prejudice so the parties may resolve the claims in accordance with their contractual alternative dispute resolution procedures.

**IT IS FURTHER ORDERED** that Defendant's Counterclaim 4 is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Counterclaims 3, 6, 7, 8 and 9 are not dismissed in accordance with this Order.

Dated this 23rd day of April, 2018.

James A. Teilborg
Senior United States District Judge